**PAUL J. HETZNECKER, ESQUIRE**
Attorney I.D. No. 49990
1420 Walnut Street, Suite 911
Philadelphia, PA   19102
(215) 893-9640                                                     Attorney for Shawn Gilbert

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL ACTION |
| VS. : |  |
| SHAWN GILBERT : | NO:   18-95 |

### DEFENDANT'S SENTENCING MEMORANDUM

### TO THE HONORABLE GERALD J. PAPPERT, JUDGE OF THE UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Shawn Gilbert, by and through his attorney, Paul J. Hetznecker, Esquire, files this Sentencing Memorandum and submits the following in support thereof:

I.    **PROCEDURAL HISTORY**

On March 13, 2018 a grand jury returned a three count Indictment charging Shawn Gilbert with intent to distribute controlled substances in violation of 21 U.S.C. §41(a)(1)(b)(1)(D)(b)(2), Count One; possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c), Count Two; and convicted felon in possession of a firearm, in violation of 18 U.S.C. §§922(g)(1) and 924(c), Count Three.

Pursuant to Federal Rule 11(c)(1)(C) the government and Mr. Gilbert entered into an agreement for Mr. Gilbert to be incarcerated for 144 months.

On March 18, 2019, Shawn Gilbert appeared before Your Honor and pled guilty to Counts One and two of the Indictment pursuant to a plea agreement. A Presentence Report was prepared.

II. **OBJECTIONS TO PRE-SENTENCE REPORT**

There are no objections to the Presentence Report.

III. **DETERMINING THE APPROPRIATE SENTENCE**

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the United States Supreme Court held that the Sixth Amendment right to a jury trial prevented judges from fact finding that expose a defendant to increased prison time. The Supreme Court excised the provision of the Sentencing Reform Act that made the guidelines mandatory and rendered the Sentencing Guidelines "effectively advisory." <u>Booker</u>, 125 S. Ct. at 757.   The Supreme Court found that the lower courts must consider the sentencing guideline range as one factor among many factors as set forth in Section 3553(a). <u>Kimbrough v. United States</u>, 128 S. Ct. 558 (2007); <u>Gall v. United States,</u> 128 S. Ct. 586 (2007).   In an effort to accomplish this purpose, the sentencing court must consider the factors as set forth in 3553(a). The guiding principle in applying these factors under Section 3553(a) is to "impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in Paragraph 2." Section 3553(a) (2) states that such purposes are:

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment for the offense:

(b) To afford adequate deterrence to criminal conduct;

(c) To protect the public from further crimes of the defendant; and,

(d) To provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In <u>United States v. Rita</u>, 125 S. Ct. 2456 (2007) the Supreme Court made it clear that the district court may ignore the guidelines and impose a completely different sentence than that which is recommended. The Supreme Court has essentially freed the district courts to disagree

with the policy decisions of Congress or the Sentencing Commission set forth within the guidelines. Following the Supreme Court's decisions in <u>United States v. Booker</u>, supra., <u>United States v. Rita</u>, supra.,   <u>Gall v. United States</u>, supra., and <u>Kimbrough v. United States</u>, supra., a sentencing court may now consider a defendant's age, education and vocational skills, or lack thereof, mental or emotional condition, physical conditions including drug and alcohol addiction, employment record, family ties and responsibilities and the lack of supervision and/or guidance as a young person. The guidelines previously prohibited the sentencing court from considering these factors, unless the situation was so exceptional that it was deemed to be "outside the heartland" of the cases generally seen by the court. Although the departures under the guidelines still require extraordinary circumstances post-<u>Booker</u>, this is distinguished from variances which have no relationship to the unusual circumstances that may be granted when departures are not only unwarranted, but prohibited. <u>United States v. Severino</u>, 454 F.3d 206 (3rd Cir. 2006): <u>Gall v. United States</u>, supra.

In both <u>United States v. Cooper</u>, 437 F.3d 324 (3rd Cir. 2006) and <u>United States v. Gunter</u>, 462 F.3d 237 (3rd Cir. 2006), the Third Circuit established the procedure for sentencing hearings.   Before fashioning the sentence, the district courts must calculate the guideline range, factoring in any objections, rule on any departure motions made pursuant to the guidelines, and then impose a sentence in light of all the relevant 3553(a) factors. The procedure as established in <u>United States v. Gunter</u>, supra., requires courts to then consider all of the factors as set forth in the record under Section 3553(a), and provide a meaningful analysis of those factors as a basis for imposing the sentence. <u>United States v. Grier</u>, 475 F.3d 556 (3rd Cir. 2007), <u>United States v. Tomko</u>, 562 F.3d 558 ( 3rd Cir. 2009)

### IV. MOTIONS FOR DEPARTURE

Neither the government nor Mr. Gilbert have filed motions for departure, or requests for variances, as the agreement in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) is for Mr. gilbert to serve a sentence of 144 months.

### V. SENTENCING FACTORS

Prior to fashioning the appropriate sentence, one that is "not greater than necessary," Your Honor must consider the factors set forth in Section 3553(a). The information set forth below with respect to each of these factors provides ample support for Your Honor to accept the agree upon 144 month sentence.

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Presently, Mr. Gilbert is forty-seven (47) years old facing a considerable period of incarceration pursuant to his agreement with the government. Throughout his life Mr. gilbert faced many deficits. His parents divorced when he was approximately two years old and for the rest of his life he had little or no contact with his father. Like Mr. Gilbert, his father had an extensive history of polysubstance abuse. As a result of his addiction his father provided little or no financial support to Mr. Gilbert. His mother moved the family to South Philadelphia and unfortunately his circumstances worsened. Mr. Gilbert dropped out of South Philadelphia High School because of the violence he faced every day.

Mr. Gilbert has suffered through drug abuse his entire life Mr. Gilbert began using drugs at the age of twelve (12) Eventually, he used cocaine, Xanax, Percocet, marijuana, and cough syrup. Mr. Gilbert reported that he stopped using cough syrup after a close friend of his died from an overdose. Although Mr. Gilbert has received some drug treatment in the past,

the programs were short term and did not address the level of his addiction.   Since his incarceration Mr. Gilbert has participated in the drug program available at the Federal Detention Center. Furthermore, he has indicated that he would like to continue drug treatment while incarcerated.

      Mr. Gilbert's present physical condition is extremely poor.   In 2016 Mr. Gilbert suffered two heart attacks which required extensive rehabilitation and medication.   In addition, Mr. Gilbert suffers from high blood pressure and, Type 2 diabetes.   For the rest of his life Mr. Gilbert will require daily medication to address these life threatening medical conditions .

      **B.**    **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

      There is no question that the criminal conduct engaged in by Mr. Gilbert is serious and that respect for the law must be a consideration in determining a just punishment.   In the process of making the determination of what constitutes a just punishment, we cannot overlook the significant impact that lengthy periods of incarceration have on the defendant's families and communities.   More significantly, the fact that the Federal Sentencing Guidelines has failed to incorporate the long term detrimental impact that lengthy federal sentences have on society demonstrates the necessity for a new educated perspective.

      Over the past two decades social science has offered significant insight into the efficacy of lengthy periods of incarceration in this struggle to achieve a "just result." For years social scientists documented the detrimental impact of long term incarceration on non-violent offenders.

During that same time period social scientists in were in general agreement that long periods of incarceration did not achieve the desired impact.   Writing for the American Criminal Law Review Professor Ian Weinstein reinforces this general consensus.   Addressing the mandatory sentencing paradigm, Weinstein asserts that mandatory minimum statues have created a shift in the power toward the prosecutor so extreme that it has damaged the adversary system and brought injustice. (See *Fifteen Years After Federal Sentencing Revolution:   How Mandatory Minimums have Undermined Effective Injustice in Narcotics Sentencing*" Ian Weinstein, Fordham University School of Law, American Criminal Law Review, Volume 40:87 http://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=1416&context=faculty_scholarship)

Written almost a decade and a half ago, this study made it clear that the overwhelming majority of criminal justice experts agreed that harsher sentences fail to either provide greater public safety or reduce crime. (Footnote 178)   The author asserts that "we are imprisoning people for many years and destructing lives and families while gaining nothing." He further asserts that " For many defendants the prospect of a sentence of two or even three years is very daunting, but many can imagine returning to their family's lives.   Defendants facing sentences of six or ten years often despair at the thought of maintaining family relationships and friendships and have difficulty imagining their lives after prison.   The current allocation of authority prevents discussion of the severity of these sentences.   After all, when mitigation is largely in control of the prosecutor, it makes little sense to mount a funneled challenge to the harshness of the sentence and there is really nowhere to take the complaint.   The current regime of overcriminalization increased prosecutorial discretion and very harsh sentencing reinforces itself."   (Page 130-131)   The author concludes that "someday many more Americans will look back and ask how could we lock up so many people for so long for such crimes. (Page 132)

Professor Weinstein's predictions are prophetic.   Unfortunately, only now, more than a decade after the Supreme Court's decision in United States v. Booker, are we coming to the realization that the winds of change are bending towards a more just and reasonable sentencing landscape.

Finally, as Your Honor well knows from the groundbreaking work done in the Eastern District of Pennsylvania, there are a myriad of social and economic obstacles to reentry. Those obstacles become much more pronounced for those reentering after lengthy periods of incarceration. (*See Incarceration and Prisoner Reentry in the United States*, The Annals of the American Academy of Political and Social Science Vol. 365, Young Disadvantaged Men: Fathers, Families, Poverty, and Policy (May 2011 pp.192-215)

http://www.jstor.org/stable/29779418

These studies support the general conclusion that long periods of incarceration have a destructive impact on an individual's rehabilitation.   Given the projected date of Mr. Gilbert's release he will be in his fifties.   Therefore, he will be an excellent candidate for reentry.

**C.   The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant.**

The agreed upon sentence of 144 months serves the dual purposes under this section.

**D.   The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

Since his incarceration Mr. Gilbert has initiated drug treatment at the Federal Detention Center.   Given his level of addiction Mr. Gilbert would benefit from a long term treatment program during his incarceration.

    **E.**    **The Guidelines and Policy Statements Issued by the Sentencing Commission and the Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct.**

Given the nature of Mr. Gilbert's criminal history as a small time drug dealer, the agreed upon sentence of 144 months does not create result in an unwarranted disparity.

**VI.**    **CONCLUSION**

WHEREFORE, we respectfully request that Your Honor fashion a sentence that is "not greater than necessary" and accept the agreed upon sentence of 144 months incarceration.

                                            Respectfully submitted,

                                            /s/ Paul J. Hetznecker, Esquire
                                            Paul J. Hetznecker, Esquire
                                            Attorney for Defendant, Shawn Gilbert

Date: July 17, 2019

## CERTIFICATE OF SERVICE

I, Paul J. Hetznecker, hereby certify that on the date below a true and correct copy of defendant's Sentencing Memorandum was served on the following:

Salvatore L. Astolfi, Esquire
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106

/s/ Paul J. Hetznecker, Esquire
Paul J. Hetznecker, Esquire
Attorney for Defendant, Shawn Gilbert

DATE: July 17, 2019